The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARISA SOPKA, *et al.*,

Plaintiffs,

v.

SOUTHCENTER OWNER LLC, *et al.*,

Defendants.

NO. 24-cv-11-BJR

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

On May 31, 2022, Plaintiffs Larisa Sopka and her two daughters were dining at The Cheesecake Factory at the Westfield Southcenter Mall shopping center in Tukwila, Washington, when a dispute among other patrons resulted in a shooting. In fear for their lives, Plaintiffs hid under the table, but a bullet struck and injured Larisa. Plaintiffs filed this lawsuit against the Cheesecake Factory and the owners of the shopping mall asserting common law claims of premises liability, negligence, and emotional distress. Defendant Southcenter Owner LLC ("Southcenter") asserted crossclaims against the Cheesecake Factory and against Universal Protection Service, LP, d/b/a Allied Universal Security Services ("Allied"). The Cheesecake Factory asserted crossclaims against Southcenter. Now pending before the Court are Defendant Southcenter's motion for partial

summary judgment regarding Allied's duty to defend, ECF No. 47, and Allied's cross-motion for summary judgment on Southcenter's crossclaim, ECF No. 49. Having reviewed the materials[1] and the relevant legal authorities, the Court rules as follows.

## II. BACKGROUND

### A. Factual background

Plaintiffs are Larisa Sopka and her daughters, Daniela Sopka and Tatyana Sopka. Am. Compl. ¶ 1, ECF No. 14. While dining at the Cheesecake Factory at Westfield Southcenter Mall in Tukwila, Washington, they noticed a commotion in the parking lot. *Id.* ¶¶ 11-12. The commotion entered the restaurant, and Daniela saw that one of the individuals had a firearm. *Id.* ¶¶ 13-14. She warned her mother and sister, and they all took refuge under the table at the restaurant. *Id.* ¶¶ 14-15. A firearm was discharged, chaos erupted in the restaurant, and Larisa was shot and injured by a bullet that struck her left leg, fracturing her fibula. *Id.* ¶¶ 16-17. Larisa suffers from chronic and potentially permanent nerve damage as well as psychological trauma. *Id.* at ¶ 18. Daniela and Tatyana also suffer from psychological trauma from witnessing their mother's shooting as well as fearing for their own lives. *Id.* ¶ 19.

### B. Procedural background

Plaintiffs filed their complaint on January 3, 2024, asserting common law causes of action against Defendants, The Cheesecake Factory Restaurants, Inc.; and numerous alleged owners and operators of the Westfield Southcenter Mall and parking lot: WEA Southcenter LLC d/b/a Westfield Southcenter Mall; URW WEA LLC; Westfield, LLC; Westfield Property Management

[1] Including Southcenter's motion, ECF No.47; Allied's response in opposition and cross-motion, ECF No. 49; Southcenter's response in opposition and reply, ECF No. 51; and Allied's reply, ECF No. 53; together with relevant exhibits.

LLC; Westfield America Partnership; Westfield DDC, Inc.; Westfield Development Inc. d/b/a Westfield Development of Washington Inc.; and Southcenter Owner LLC. Compl. ¶¶ 1-13, ECF No. 1.[2] In May 2024, the Parties reached an agreement on the necessary and proper corporate defendants, and it was determined that Southcenter Owner LLC is the only necessary defendant as the owner and operator of the Westfield Southcenter Mall and parking lot; the various Westfield entities were dismissed from the lawsuit. *See* ECF No. 13. Plaintiffs filed the First Amended Complaint, the operative complaint, which names Southcenter Owner LLC ("Southcenter"); The Cheesecake Factory Restaurants, Inc. ("The Cheesecake Factory"); and added Defendant Universal Protection Services, LP, d/b/a Allied Universal Security Services ("Allied"), alleged to provide security services at the Westfield Southcenter Mall as well as The Cheesecake Factory restaurant on the mall premises. Am. Compl. ¶¶ 4-6.

Plaintiffs asserted four causes of action against all Defendants: (1) Count I – Premises Liability; (2) Count II – Negligence; (3) Count III – Common Law Gross Negligence; and (4) Negligent Infliction of Emotional Distress. *Id.* ¶¶ 28-37.

Southcenter then asserted a crossclaim against Allied, alleging that Westfield Property Management LLC and Allied entered into a security services agreement ("the Allied Agreement") in which Allied agreed to perform certain security work at the shopping center and agreed to defend, indemnify, and hold harmless Westfield and its affiliates and successors from "all claims arising out of any acts or omissions of Allied or its employees." Southcenter Crossclaim 9-10, ¶¶ 8-9, ECF No. 17-1. The Allied Agreement also required Allied to maintain a commercial general liability policy, naming WEA Southcenter LLC, Westfield Property Management LLC and their parents,

[2] This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a)(1).

partners, subsidiaries, affiliates, successors, and assigns, as additional insureds. *Id.* at 10, ¶ 10. Southcenter is an affiliate of, and successor-in-interest to WEA Southcenter LLC. *Id.* ¶ 11. Southcenter tendered to Allied for its defense and indemnity obligations with respect to Plaintiffs' claims. *Id.* ¶ 12. Allied did not accept Southcenter's tender, which Southcenter claims is a breach of contract. *Id.* ¶ 13.

Southcenter also asserts a crossclaim against The Cheesecake Factory. *Id.* at 7-9. Southcenter alleges that the lease with The Cheesecake Factory required The Cheesecake Factory to indemnify, protect, defend, and hold it harmless for all claims arising out of The Cheesecake Factory's negligent acts, omissions, or willful misconduct. *Id.* ¶ 8. Southcenter alleges that the lease also required The Cheesecake Factory to maintain a commercial general liability policy that names it as an additional insured. *Id.* ¶¶ 9-10. Southcenter alleges that it tendered to The Cheesecake Factory for contractual defense and indemnity against Plaintiffs' claims but The Cheesecake Factory denied tender, which constitutes a breach of contract and possibly a breach of the lease. *Id.* ¶¶ 11-15.

The Cheesecake Factory asserted crossclaims against Southcenter. Cheesecake Answer § VII, ECF No. 18. The Cheesecake Factory alleges that Southcenter was aware of the high crime at Southcenter Mall and was negligent in failing to take reasonable steps to secure the common areas of the shopping center. *Id.* ¶¶ 4-5. The Cheesecake Factory asserts that if it is found liable to Plaintiffs, it is entitled to contribution and indemnity for their proportionate share of fault. *Id.* ¶ 6.

Southcenter filed the pending motion seeking partial summary judgment on the "duty" and "breach" elements of its crossclaim against Allied for breach of the contractual duty to defend. Southcenter Mot. 1, ECF No. 47. Allied moves for summary judgment dismissing Southcenter's crossclaim against it. Allied Mot. 1, ECF No. 49.

## III. LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (noting the court's responsibility to determine whether disputed issues of material fact are present).

The standard for summary judgment does not change in the context of cross-motions. Thus, in reviewing cross-motions for summary judgment, "each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (quoting *Fair Housing Council*, 249 F.3d at 1136). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir.

2015); *see also AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*, 470 F. Supp. 3d 1210, 1216 (W.D. Wash. 2020). The Court must rule on each motion "on an individual and separate basis determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *AGCS Marine Ins.*, 470 F. Supp. 3d at 1216 (quoting 10A *Wright & Miller's Federal Practice & Procedure* § 2720 (3d ed. 1998)).

## IV. DISCUSSION

Southcenter and Allied agree that Allied entered into a contract (the Allied Agreement) on September 1, 2020, for the provision of security services at the shopping mall, the contract was in effect at the time of the incident, and Southcenter is covered under the contract. *See* Southcenter Mot. 5; Allied Mot. 2. Southcenter and Allied also agree that California law governs any dispute arising under the Allied Agreement. Southcenter Mot. 6; Allied Mot. 3.

Southcenter asserts that the Allied Agreement "requires Allied to defend, indemnify, and hold harmless [Southcenter] from and against any and all claims arising out of any act or omissions of Allied." Southcenter Mot. 5 (citing section 14(a) of the Allied Agreement[3]). Southcenter argues that Allied has a clear duty "to provide a defense, irrespective of the final determination of indemnity." Southcenter Reply 2; *see also id.* at 3-4 ("Allied need not be found to be actually negligent in this matter--the duty to defend is triggered if the underlying tort complaint merely alleges that Allied was negligent, which it does in the present case."). But Allied argues that it has no duty to defend Southcenter against the Plaintiffs' claims because the duty to defend arises only when the tendered claim could be within the indemnification obligation, and Plaintiffs' claims do not fall within the scope of the indemnity provision. Allied Mot. 13. Allied contends that the

[3] Both parties filed similarly redacted versions of the Allied Agreement. Southcenter's filing is located at ECF No. 48, Ex. A. Allied's filing is located at ECF No. 50-1.

Agreement specifically limits Allied's defense obligations to claims caused by Allied's negligence and "*expressly excludes* any defense and indemnity obligations for [Southcenter's] own independent negligence." Allied Mot. 2-3, 9 (citing Allied Agreement section 14(a)).

**A. Duty to defend**

The duty to defend and the duty to indemnify are not identical; the duty to defend is broader than the duty to indemnify. *Regan Roofing Co. v. Superior Court*, 24 Cal. App. 4th 425, 435 (1994) (disapproved on another point in *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 565 (2008)). Whether there is a duty to defend is a question of law for the court to decide. *Centex Homes v. R-Help Constr. Co., Inc.*, 32 Cal. App. 5th 1230, 1236 (2019).

Under California law, a duty to defend is created at the time of tender, well before a duty to indemnify can be determined, and it is based on the alleged facts in the underlying claims. *Crawford*, 44 Cal. 4th at 558. Here, Plaintiffs alleged that "Defendants failed to implement appropriate security protocols, and any security measures they did implement were insufficient," Am. Compl. ¶ 25, "failed to exercise even slight care in the hiring, supervision, and retention of security Personnel", *Id.* ¶ 34, and Plaintiffs asserted each of their causes of action against all Defendants, including Allied. "[W]here the plaintiff's complaint alleges facts embraced by the indemnity agreement, the indemnitor has a duty to defend throughout the underlying tort action unless it can conclusively show by undisputed facts that plaintiff's action is not covered by the agreement." *Centex*, 32 Cal. App. 5th at 1237.

The relevant provision in the Allied Agreement provides as follows:

> [Allied] agrees to indemnify, defend protect and hold [Southcenter] . . . harmless, from and against any and all claims, losses, proceedings, damages, causes of action, liability, injury, awards, fines, judgments, costs and expenses (including but not limited to

> reasonable attorneys' fees) to the extent caused by: 1) the negligent acts or omissions, or the acts, errors or omissions of [Allied] or any agent or employee of [Allied] or any subcontractor arising out of its rendering or failure to render the Services, or 2) any claim made against [Southcenter] in connection with the negligence or misconduct or failure to act of any employee or agent of [Allied] or any subcontractor, irrespective of whether such employee is a loaned employee to or a borrowed servant of [Southcenter]. Notwithstanding the foregoing, the parties agree that [Allied] shall not be required to indemnify, defend, protect, or hold harmless [Southcenter] for [Southcenter]'s own negligent acts or omissions or willful misconduct.

Allied Agreement ¶ 14.a.

Allied argues that this provision limits its duty to defend "to the extent" that Allied caused the relevant claims, which requires a showing of causation before the duty can arise, because otherwise Allied would be forced to pay for a defense against a claim it may not have caused. Allied Mot. 1-2, 13-15. However, California courts have rejected this argument, ruling that "to the extent caused by" is an allocation tool for indemnity, not a delay tactic for the defense. *See, e.g.*, *Centex*, 32 Cal. App. 5th at 1238 (affirming that the duty to defend arises upon tender of a potentially covered claim and exists even if the indemnitor is ultimately found not liable); *UDC-Universal Development, L.P. v. CH2M Hill*, 181 Cal. App. 4th 10, 23-24 (2010) (affirming that the defense obligation arose based on the plaintiff's allegations); *Crawford*, 44 Cal. 4th 541 (holding that a contractual indemnitor incurs a duty to defend the indemnitee as soon as the indemnitee tenders its defense to the indemnitor). "[I]t is too late to challenge the duty to defend after the underlying tort case has been resolved." *Centex*, 32 Cal. App. 5th at 1238.

Allied contends that the circumstances here are distinguishable from *Crawford* because the clause in the Allied Agreement wraps "indemnify, defend, protect and hold harmless" into a single sentence that is modified by "to the extent caused by." Allied Mot. 14 (quoting the Allied

Agreement). Allied adds that there is a second sentence confirming that Allied is not required to defend or indemnify any indemnitee for its "own negligent acts or omissions or willful misconduct." *Id.* However, indemnify and defend are not synonyms, they are distinct legal obligations. Under California Civil Code § 2778 (4), "[t]he person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity . . . ." Unless a contract explicitly waives or disclaims Section 2778(4), the word "defend" carries its full statutory weight, regardless of where it is positioned grammatically. *See Crawford*, 44 Cal. 4th at 553 ("[T]he obligations set forth in section 2778 thus are deemed included in every indemnity agreement unless the parties indicate otherwise."); *Id.* at 557-58 (discussing Section 2778, the Court clarified that "[u]nless the indemnity agreement states otherwise, the statutorily described duty 'to defend' the indemnitee upon tender of the defense" extends to all claims "which, at the time of tender, *allege* facts that would give rise to a duty of indemnity" regardless of the ultimate outcome of the litigation). "[S]ometimes it will not be clear whether an action brought against the indemnitee is within the scope of the indemnity until after the underlying action has been resolved. In those situations, the duty to defend nonetheless arises." *City of Bell v. Superior Court*, 220 Cal. App. 4th 236, 249 (2013).

Accordingly, because the facts alleged potentially fall within the scope of indemnity, Allied's duty to defend was triggered, and Allied owes Southcenter a duty to defend. Under the same reasoning, the Court denies Allied's motion for summary judgment dismissing Southcenter's crossclaim against it based on its argument that Allied has no duty to indemnify Southcenter, Allied Mot. 7. Material questions of fact remain regarding the liability of each of the parties sued by Plaintiffs, which precludes summary judgment on the duty to indemnify.

**B. Breach of duty to defend**

As discussed above, California Civil Code § 2778 (4), by specifying an indemnitor's duty "to defend" the indemnitee upon the latter's request, places in every indemnity contract, unless the agreement provides otherwise, a duty to assume the indemnitee's defense, if tendered, against all claims "embraced by the indemnity."

By tender letter on February 27, 2024, Southcenter requested Allied defend Southcenter against Plaintiffs' claims in this lawsuit. Southcenter Mot. 6 (citing Troy Decl. Ex. B, ECF No. 48). When it received no response, Southcenter sent a follow-up tender letter on May 13, 2024 and again on May 29, 2025. *Id.* (citing Troy Decl. Exs. C, D). In the third letter, Southcenter highlighted Allied's requirement to notify Southcenter or its claims adjuster of a rejection or acceptance of the tender within 20 days from the date of the tender, noting that failure to respond within the time period "shall be deemed an acceptance of such tender, and in all events, [Allied] shall remain responsible for all reasonable attorney's fees as required hereunder, including any incurred from the date of the initial tender." *Id.* at 7 (quoting Allied Agreement section 14(b)). "Allied confirmed its willingness to defend Southcenter starting from July 22, 2025, forward, subject to a reservation of rights, maintaining that there is no *obligation* to defend Southcenter." *Id.* (quoting Troy Decl. ¶ 3, ECF No. 48).

Southcenter crossclaimed against Allied for breach of the contractual duty to defend and it contends that the duty and breach elements have been proven. The Court agrees. "[A] belated offer to pay the costs of defense may mitigate damages but will not cure the initial breach of duty." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 881 (2000).

**C. Duty to pay attorney's fees and costs**

Southcenter also asks the Court to enter an order that Allied has a duty to pay the fees and costs that Southcenter incurs to enforce Allied's duty to defend. Southcenter Mot. 2, 6, 13-14. Allied argues that although the Agreement entitles Southcenter to fees if it prevails on an "action or proceeding," Southcenter's motion is for only "*partial* summary judgment" and not on its full crossclaim, so Southcenter is not yet a prevailing party for the entire action as required. Allied Mot. 20.

The relevant provision in the Allied Agreement provides as follows:

> Both parties agree that it will pay the other's reasonable attorneys' fees if either party institutes any action or proceeding against the other party arising out of or related to this Agreement and prevails in such action. Such attorneys' fees shall include, but not be limited to, attorneys' fees, costs and disbursements as well as any such fees incurred by the prevailing party on appeal from any such action or proceeding.

Allied Agreement ¶ 23.f. The right to contractually agreed-upon attorney's fees is governed by California Civil Code § 1717(1), which authorizes an award of attorney fees "[i]n any action on a contract" to "the party prevailing on the contract" if the contract provides for an award of attorney fees. It further states that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." *Id.* at § 1717(b)(1).

Under this statute, a court cannot declare a "prevailing party" for the purpose of awarding fees until all contract claims in the action are completely resolved. *See, e.g.*, *Hsu v. Abbara*, 9 Cal. 4th 863, 876 (1995) (prevailing party determination is to be made by comparing the parties' relative degree of success "upon final resolution of the contract claims"); *DisputeSuite.com, LLC v. Scoreinc.com*, 2 Cal. 5th 968, 977 (2017) ("[F]ees under section 1717 are awarded to the party who prevailed on the contract overall, not to a party who prevailed only at an interim procedural step."

(citing *Frog Creek Partners, LLC v. Vance Brown, Inc.*, 206 Cal. App. 4th 515, 546 (2012))); *Roberts v. Packard, Packard & Johnson*, 217 Cal. App. 4th 822, 831 (2013) ("By referring to 'the' prevailing party and stating that '*the* party prevailing on the contract shall be *the* party who *recovered a greater relief* in the action on the contract' (italics added), section 1717 contemplates that only one side in a lawsuit can be the prevailing party, and the prevailing party determination cannot be made until the parties' requests for relief . . . have been resolved.").

Here, the Court cannot yet determine the prevailing party in "the action on the contract"— Southcenter's crossclaim— because there are pending issues to resolve, including indemnification, and insurance coverage.[4]

Accordingly, the Court denies Southcenter's request for attorney's fees and costs as premature pending the total resolution of all claims.

[4] Southcenter also alleged that Allied had failed to name Southcenter as an additional insured on its insurance policies as required by the Allied Agreement. Southcenter Crossclaim ¶ 16, ECF No. 17-1. This issue has not been resolved. *See* Southcenter Mot. 12; Allied Mot. 11.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant Southcenter Owner LLC's Motion for Partial Summary Judgment re: Universal Protection Service, LP's Duty to Defend, ECF No. 47, is GRANTED IN PART and DENIED IN PART;
    a. Southcenter's motion for partial summary judgment on Allied's duty to defend and breach of duty to defend is GRANTED;
    b. Southcenter's motion for attorney's fees and costs is DENIED WITHOUT PREJUDICE as premature;
2. Universal Protection Service's Cross-Motion for Summary Judgment on Southcenter's Crossclaim, ECF No. 49, is DENIED.
3. This case shall proceed pursuant to its Scheduling Order, ECF No 42, as modified by ECF No. 63.

DATED this 17th day of August 2026.

Barbara Jacobs Rothstein
United States District Judge