The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARISA SOPKA, *et al.*,

Plaintiffs,

v.

SOUTHCENTER OWNER LLC, *et al.*,

Defendants.

NO. 24-cv-11-BJR

**ORDER GRANTING SUMMARY JUDGMENT**

## I. INTRODUCTION

On May 31, 2022, Plaintiffs Larisa Sopka and her two daughters were dining at The Cheesecake Factory at the Westfield Southcenter Mall shopping center in Tukwila, Washington, when an altercation in the restaurant resulted in a shooting. In fear for their lives, Plaintiffs hid under the table, but a bullet struck and injured Larisa. Plaintiffs filed this lawsuit against The Cheesecake Factory and the owners of the shopping mall asserting common law claims of premises liability, negligence, and emotional distress. Defendant Southcenter Owner LLC ("Southcenter") asserted crossclaims against The Cheesecake Factory and against Universal Protection Service, LP, d/b/a Allied Universal Security Services ("Allied"). The Cheesecake Factory asserted crossclaims against Southcenter. Currently pending before the Court is The Cheesecake Factory's motion for

summary judgment, ECF No. 67. Two other motions are also pending: (1) Allied's motion for summary judgment, ECF No. 65; and (2) Allied's motion to exclude testimony of Stephen Newman, ECF No. 66. The Court will address these motions by separate Order. Having reviewed the materials[1] and the relevant legal authorities, the Court will grant The Cheesecake Factory's motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. Factual background

Plaintiffs are Larisa Sopka and her daughters, Daniela Sopka and Tatyana Sopka. Am. Compl. ¶ 1, ECF No. 14. While dining at The Cheesecake Factory at Westfield Southcenter Mall in Tukwila, Washington, they were caught up in a disturbance caused by nearby patrons at the restaurant. *Id.* ¶¶ 11-15. A firearm was discharged, chaos erupted in the restaurant, and Larisa was shot and injured by a bullet that struck her left leg, fracturing her fibula. *Id.* ¶¶ 16-17. Larisa suffers from chronic and potentially permanent nerve damage as well as psychological trauma. *Id.* at ¶ 18. Daniela and Tatyana also suffer from psychological trauma from witnessing their mother's shooting as well as fearing for their own lives. *Id.* ¶ 19.

### B. Procedural background

The Court recently detailed the procedural background of this case in its Order on cross motions for summary judgment filed by Southcenter and Allied. *See* ECF No. 71. The details are largely irrelevant to this motion, and thus, are not repeated here. In brief, Plaintiffs filed their complaint on January 3, 2024, asserting common law causes of action against Defendants, and they

[1] Including Cheesecake Factory's summary judgment motion, ECF No. 67; Allied's response in opposition, ECF No. 76; Southcenter's response in opposition, ECF No. 78; Plaintiffs' response in opposition, ECF No. 82; and Cheesecake Factory's reply, ECF No. 91; together with relevant exhibits.

filed the First Amended Complaint, the operative complaint, which names Southcenter Owner LLC ("Southcenter"); The Cheesecake Factory Restaurants, Inc. ("The Cheesecake Factory"); and Defendant Universal Protection Services, LP, d/b/a Allied Universal Security Services ("Allied"). Am. Compl. ¶¶ 4-6. Plaintiffs asserted four causes of action against all Defendants: (1) Count I – Premises Liability; (2) Count II – Negligence; (3) Count III – Common Law Gross Negligence; and (4) Negligent Infliction of Emotional Distress. *Id.* ¶¶ 28-37. Defendants also filed crossclaims. ECF Nos. 17-1, 18.

The Cheesecake Factory now moves for summary judgment on Plaintiffs' claims. MSJ, ECF No. 67.

## III. LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

## IV. DISCUSSION

The Cheesecake Factory argues that Plaintiffs cannot establish that the shooting was reasonably foreseeable as a matter of law. MSJ 4. Plaintiffs contend that The Cheesecake Factory was on notice of similar acts of violence, making the shooting incident foreseeable. Pls.' Opp'n 2. Because Plaintiffs' claims are all based on a theory of negligence, which requires a determination that a duty exists,[2] the Court will begin with an analysis of duty and foreseeability as it applies to the facts of this case.

### A. Legal Duty

The determination of whether a duty exists is a question of law. *McKown v. Simon Prop. Grp., Inc.*, 182 Wn. 2d 752, 762 (2015) (citing cases). "Under the *Restatement of Torts*, actors have a duty to exercise reasonable care to avoid the foreseeable consequences of their own actions." *Nunley v. Chelan-Douglas Health Dist.*, 32 Wn. App. 2d 700, 710 (2024) (citing Restatement (Second) of Torts § 281 cmts. c, d (1965)). And the duty to exercise reasonable care includes avoiding exposing another to harm from the foreseeable conduct of a third party. *Id.* (quoting *Washburn v. City of Fed. Way*, 178 Wn. 2d 732, 757 (2013)). But criminal conduct is usually not foreseeable, so "there is generally no duty to prevent third parties from causing criminal harm to others." *Id.* An exception to this general rule applies when a special relationship exists between the defendant and the victim. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn. 2d 192, 200 (1997), *as amended* (Oct. 1, 1997). The relationship between a business and an invitee is a special relationship, and a

---

[2] *See, e.g.*, *Allen v. Phish*, 35 Wn. App. 2d 301, 311, (2025) *review denied sub nom. Allen v. Phish, Inc.*, 5 Wn. 3d 1032 (2026) ("A negligence cause of action 'requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury.'" (quoting *Tincani v. Inland Empire Zoological Soc.*, 124 Wn. 2d 121, 127-28 (1994))).

business invitee is owed a duty of reasonable care for reasonably foreseeable criminal conduct by third persons. *Id.* at 202, 205.

"[I]f a third party's criminal conduct is reasonably foreseeable, an actor may have a duty to avoid actions that expose another to that misconduct." *Nunley*, 32 Wn. App. at 711 (quoting *Parrilla v. King Cnty.*, 138 Wn. App. 427, 437 (2007)). However, one is not required to anticipate that a crime will be committed unless there has been a warning. *Id.* at 714. "Crime is invariably foreseeable everywhere, yet unforeseeable in any specific time and place." *Crill v. WRBF, Inc.*, 189 Wn. App. 1052 (2015) (unpublished). Certain factors may play a critical role when considering reasonable foreseeability of a criminal act in the context of the duty towards a business invitee, including: (1) the imminence of the attack, (2) the known criminal propensities of the attacker, (3) the neighborhood of the business, (4) the character of the business, and (5) the history of the business. *McKown*, 182 Wn. 2d at 769-70.

**B. The Cheesecake Factory's duty**

Plaintiffs contend that The Cheesecake Factory had a duty to protect them, as business invitees, from the threat of reasonably foreseeable acts of violence, and they assert that The Cheesecake Factory was on notice of similar acts of violence in the years leading up to the shooting incident. Opp'n 2, 13. The Cheesecake Factory maintains that Plaintiffs cannot make the necessary showing that the act of an unknown third party was foreseeable and argues that the Court should find, as a matter of law, that the act was unforeseeable and no duty to protect was triggered. Reply 2-3.

Here, because a special relationship exists between The Cheesecake Factory, a business, and Plaintiffs, as invitees of the business, The Cheesecake Factory owed a duty to the Plaintiffs to

protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons. *Nivens*, 133 Wn. 2d at 205. "This is only a 'potential' duty and does not apply to a specific case unless the plaintiff can demonstrate that the specific criminal conduct was foreseeable." *Allen*, 35 Wn. App. 2d at 313 (citing *Nivens*, 133 Wn. 2d at 205). This limited duty is explained in the Comment f to Restatement s 344, as follows:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Plaintiffs assert that The Cheesecake Factory had reason to know that "the acts of the third person [we]re occurring, or [we]re about to occur," based on "past experience" and "prior similar incidents." Opp'n 14-18. The Court observes that "the evidence must demonstrate that the specific act in question was foreseeable." *Allen*, 35 Wn. App. 2d at 304; *see also McKown*, 182 Wn. 2d at 767 (narrowing "the duty inquiry to whether *the specific acts* in question were foreseeable rather than whether the landowner should have anticipated any act from a broad array of possible criminal behavior or from past information from any source that some unspecified harm is likely."). The criminal act of the third person at issue here is that on May 31, 2022, a gun was brandished by an unknown assailant, and shots were fired. For The Cheesecake Factory to have a legal duty to Plaintiffs, these acts must have been reasonably foreseeable. The Court considers the evidence of

prior similar incidents and whether The Cheesecake Factory had reason to know that these acts were about to occur.

**a. Prior similar incidents**

Generally, Washington courts analyzing foreseeability in this context have focused on the history of violence known to the defendant, rejecting a broad "totality of the circumstances" test, "reluctant to find criminal conduct foreseeable." *McKown*, 182 Wn. 2d at 764-66, 765 n.3, 771-72 (citing cases); *Allen*, 35 Wn. App. 2d at 315 (confirming that prior experience does not include generalized criminal conduct). Indeed, Washington courts have recognized that "it is often unfair to place the burden of third parties' criminal conduct on a business," specifically rejecting "the idea that location of the premises in an urban area with a high incidence of crime favors imposing a duty." *McKown*, 182 Wn. 2d at 766, 769.[3] To trigger a legal duty based on prior experience, a plaintiff must demonstrate "a history of prior similar incidents on the business premises within the prior experience of the possessor of the land." *Id.* at 771.

The prior similar incidents test was described in *McKown*,

> If a particular type of crime has occurred repeatedly on its premises in the recent past, a business may have reason to anticipate that such a crime will happen again. But if the criminal act that injures the plaintiff is not sufficiently similar in nature and location to the prior act(s) of violence, sufficiently close in time to the act in question, and sufficiently numerous, then the act is likely unforeseeable as a matter of law under the prior similar incidents test.

182 Wn. 2d at 772. And the *Allen* court emphasized that the duty inquiry focuses on "whether the specific acts in question were foreseeable rather than whether the landowner should have anticipated any act from a broad array of possible criminal behavior or from past information from

[3] The *McKown* court explained that "imposition of a duty could result in the departure of businesses from urban core areas—an undesirable result." 182 Wn. 2d at 769.

any source that some unspecified harm is likely." 35 Wn. App. 2d at 316 (quoting *McKown*, 182 Wn. 2d at 767). Indeed, "[w]here no evidence is presented that the defendant knew of the dangerous propensities of the individual responsible for the crime, and there is no history of such crimes occurring on the premises, the courts have held the criminal conduct unforeseeable as a matter of law." *McKown*, 182 Wn. 2d at 773 (quoting *Wilbert v. Metro. Park Dist. of Tacoma*, 90 Wn. App. 304, 309 (1998), *as amended on denial of reconsideration* (Apr. 24, 1998)).

In this case, there is no evidence regarding the unknown shooter, so there is no evidence that The Cheesecake Factory knew of the shooter's dangerous propensities or of previous acts by the shooter. Similarly, Plaintiffs provided no evidence of prior similar incidents on The Cheesecake Factory's premises. Rather, Plaintiffs point to evidence of violent incidents that occurred at the Southcenter Mall and to evidence of car thefts and gun activity in the parking lot. Opp'n 16-18 (citing unidentified evidence in the record). Based on the Plaintiffs' earlier reciting of the facts, the Court considered the following incidents reported as occurring prior to May 31, 2022:

- In "November 2018, the Cheesecake Factory's real estate asset manager reported to Westfield an 'influx of car thefts and vandalisms' affecting staff and reported that an employee had encountered an attempted robbery at gunpoint while walking to her vehicle in the Cheesecake Factory parking lot." Opp'n 7 (citing Hastings Decl. Ex. 7, Singh Dep. 101-103).

- In the deposition of the restaurant's on-duty manager, she was asked about prior incidents and stated: "At some point in the restaurant's past, the time frame of which I do not know, I was told that one of the servers had been held up at gunpoint in the parking lot. I was also informed at an indeterminate date before this event that there was a dishwasher on shift who had been approached by individuals when he was outside, and they had pulled a gun on him. And I recall a generalized anxiety amongst the staff and managers about car break-ins." Hastings Decl. Ex 2, Giannetti Dep. 105, 114.

- An Allied security consultant testified that there was a security incident in November 2020, and a report that the adjacent parking lot had been the site of two recent assaults and a history as a hotspot for vehicle-related crime. Opp'n 7 (citing Singh Dep. 101, 109).

- The Allied security consultant also testified about reports of other incidents in the Southcenter Mall: April 28, 2021, a handgun was discharged on the rooftop of the AMC theater at the Mall during a fight between two groups; May 1, 2021, shots were fired inside the mall near an Express store and an innocent bystander was struck with an errant bullet; June 5, 2021, a confrontation in the south lot at the Mall resulted in a tenant suffering gunshot wounds; November 23, 2021, a shooting killed one Mall patron and injured another in the Mall's east parking lot, near the JC Penney store. Opp'n 8 (citing Singh Dep. 111, 116, 121-122, 138).

There is no evidence of any shooting, or other violent crimes, having ever occurred inside the restaurant, nor at any Cheesecake Factory Restaurant nationwide. Leisure Decl. 2, ¶6. The two gun-related incidents reported in or near the Cheesecake Factory's parking lot occurred in November 2018 and 2020, which are not sufficiently proximate in time. The Plaintiffs' reported incidents at the Southcenter Mall were not sufficiently similar in nature, location, or time to the act in question, to have placed The Cheesecake Factory on notice that a shooter in the restaurant was foreseeable. *See McKown*, 182 Wn. 2d at 772 ("Under a broad notice rule, foreseeability would become an all-expansive standard for imposing a duty on a business to protect invitees from criminal assaults of third parties on the business premises.").

**b. Immediate or imminent harm**

Plaintiffs also contend that The Cheesecake Factory failed to act in the face of imminent harm, based on testimony that there was a "problem" table of loud, intoxicated, and boisterous customers that was reported to the on-duty restaurant manager; verbal arguing broke out in the restaurant lobby and vestibule, which quickly escalated to physical fighting; and no security or law enforcement assistance was summoned prior to a firearm being drawn. Opp'n 14-15 (citing unidentified portions of the record). Plaintiffs argue that The Cheesecake Factory had reason to know, due to the escalating disruption from a table of rowdy customers, that its other customers were in danger from the discharge of a firearm. *Id.* Plaintiffs estimate that the altercation lasted two

to three minutes. *Id.* at 5. Police arrived less than a minute after the first 9-1-1 call, which was after the shooting began. *Id.*

From Plaintiffs' recitation of the events earlier in their brief, Plaintiffs cite testimony from a server, Ms. Bunting, having observed one or two men from the problem table move to the vestibule, where another man arrived, and the altercation erupted. Opp'n 5 (citing Hastings Decl. Ex. 1, Bunting Dep. 29). Ms. Bunting described her managers approaching and "then all of a sudden" one of her coworkers told her "he's got a gun" and she heard shots fired. Bunting Dep. 29. Upon review of her deposition, the Court observes that Ms. Bunting described the group of five or six people who had been seated for "some kind of a surprise party," as "kind of – they were a little bit rowdy, but more just like on the annoying side where – I mean, we've seen stuff like that before and we just kind of had the feeling that the server was going to have their hands full with that table." *Id.* at 28. She added, "it wasn't a negative loud, they were just loud." *Id.* She was asked if the behavior was a cause of concern, and her response was: "Not as far as like our safety was concerned. It was more of like a, Okay, it's going to be one of those tables, which I mean, we get them all the time." *Id.* at 69. Ms. Bunting testified that she didn't believe there was any reason to call security, nor that they presented a danger, nor that a shooting was about to occur. *Id.* She wasn't sure if it was someone from the table, or the person who came in from outside the restaurant that brandished the gun. *Id.* at 70. Her estimate of the time between the altercation and the shots being fired "the entire thing from like start to finish, the verbal fighting to the shooting, I would say maybe a couple of minutes, two to three." *Id.* at 72.

Plaintiffs also cited testimony from Karen Giannetti, one of the managers at The Cheesecake Factory on duty on May 31, 2022. Opp'n 6 (citing Hastings Decl. Ex. 2, Giannetti Dep.).[4] Ms. Giannetti testified that her shift began as a very typical one. Giannetti Dep. 41. Partway into the shift, a woman approached her to complain about her family not being served timely and they were leaving. *Id.* As Ms. Giannetti was talking to her, an altercation broke out behind them in the lobby, escalating to 15 to 20 people. *Id.* at 53. She estimated that it happened very quickly, and she heard the gunshot a brief time after the altercation started, but she did not know how much time elapsed. *Id.* at 56-58. She recalls being told there was a difficult table, "but nothing occurred at the table that would require managers' intervention." *Id.* at 82. When asked if a party acting intoxicated or high would usually be asked to leave, she stated: "That would depend on the context of the situation. In my experience, I have encountered individuals who are intoxicated, [at] which point we have refused further alcohol service. It is not necessarily grounds for being asked to leave the restaurant." *Id.* at 83.

From other deposition testimony provided by the parties, the Court gleaned the following:

- Plaintiffs, Tatyana and Daniela Sopka, testified that despite being seated in the restaurant for two hours, they never felt unsafe until they heard someone shouting "gun." Daniela Sopka Dep. 43, ECF No. 72-2; Tatyana Sopka Dep. 54, ECF No. 77-5, ECF No. 70-11. Daniela indicated she thought she'd heard some arguing in the parking lot but didn't hear or observe any disputes within the restaurant, nor any physical altercation. Daniela Sopka Dep. 36-37, 43, 48.

- Regarding the altercation and advance warning of a gun: "They came from outside, and they made it into the foyer." Bunting Dep. 70. "I observed just a little bit of it, and it looked like they were getting into some kind of a verbal argument, and at that point that was when I thought we were going to have to call security, but then they just escalated it to the extreme. . . . It was too quick for any of us to do anything about it." *Id.* at 71. "I did not see an individual with a gun." *Id.* at 73. Another waiter reported that people came into restaurant who hadn't been in before and were arguing with people from the problem table at the entrance near the host stand, and

[4] *See also* Townsend Decl. Ex. 5, Giannetti Dep., ECF No. 70-5.

then "instantly, "like, 40 seconds," he heard the word "gun" being shouted, and then shots. Garcia Dep. 12, 25, 19-20, ECF Nos. 77-2, 86-6. Austin Hansen, the server for the group, testified that the group was "high," smelled of weed, and were rude, but he did not observe anything that led him to be concerned about gun violence being imminent. Townsend Decl. Ex. 8, Hansen Dep. 33-34, 64, ECF No. 70-8. He recalled seeing a "scuffle" or "kerfuffle" in the lobby area, "nothing too crazy. It was like, you know, I couldn't tell what was happening. You know, sometimes friends, they roughhouse, whatever, and I've seen it happen. So I didn't think much of it until I heard screaming." *Id.* at 41, 59-60. He estimated that about 15 seconds passed from when he observed the commotion until he heard a woman scream, and gunshots went off pretty quickly. *Id.* at 41, 64.

- Plaintiffs do not mention the CCTV surveillance footage, but testimony regarding the footage indicates that the verbal altercation erupted about 8:42 in the front entrance, the unknown shooter entered the lobby with a young child at 8:45:07, and the weapon first became visible on Channel 2[14] (the front desk) at 8:45:29. *See* La Rosa Decl., Ex. 2, ECF No. 85 (noting that the quality of the footage was poor); Townsend Decl. Ex. 4, Marquez Dep. 49, ECF No. 70-4; *see also* Townsend Decl. Ex 12, Newman Dep. 97 (estimating that less than a minute elapsed between the start of the disturbance until the shooting, based on his review of the file evidence including the video footage). The timeline reflects that the incident evolved quickly, and the shots may have been fired just seconds after the weapon was brandished. *Id.* According to deposition testimony and citations to the 911-logs, the first call to 9-1-1 was at 8:44:47. Townsend Decl. Ex. 17, Kaufer Rpt. 10, ECF No. 70-17; LaRosa Decl. Ex. 2 at 22. The police arrived at 8:45:40. *Id.*

Here, an unknown person committed a criminal act on business premises by brandishing and firing a gun, and an innocent bystander was hit by a stray bullet. The evidence reveals that there was unruly and loud behavior prior to the shooting, but that is insufficient to establish that gunfire was imminent. *Wilbert*, 90 Wn. App. at 310. Under *Wilbert*, knowledge of a "tense atmosphere," aggressive crowds, or minor physical altercations does not put a business on notice that a sudden shooting is imminent. *Id.* Evidence of antisocial, unruly, or even hostile behavior is generally insufficient to establish that a defendant with a supervisory duty should reasonably have anticipated a more serious misdeed." The *Wilbur* court held that the criminal event in question in that case was not foreseeable as a matter of law, and therefore there was no duty of prevention. So too here. Rowdy table behavior at The Cheesecake Factory had never in the past led to gun violence of any

kind, and it was not reasonable for the staff to have anticipated that gunshots would be fired in the restaurant on the evening of May 31, 2022 in sufficient time to have prevented it or provided any earlier warning than the shout of "gun" that occurred that night. Because the act was not reasonably foreseeable, no legal duty was triggered from The Cheesecake Factory to the Plaintiffs.

Accordingly, the Plaintiffs' negligence claims fail with regard to The Cheesecake Factory, and the Court will grant The Cheesecake Factory's motion for summary judgment. The Court will separately resolve the remaining pending motions.

## V. CONCLUSION

For the foregoing reasons:

1. Defendant The Cheesecake Factory Restaurants, Inc.'s Motion for Summary Judgment, ECF No. 67, is GRANTED.
2. Plaintiffs' claims against The Cheesecake Factory Restaurants, Inc. are DISMISSED WITH PREJUDICE.
3. The Court will resolve the remaining pending motions by separate order.

DATED this 10th day of November 2026.

Barbara Jacobs Rothstein
United States District Judge